J-A27026-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| D.B. AND D.B., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| J.W., T.C., | |
| Appellees | No. 569 WDA 2015 |

Appeal from the Order entered March 11, 2015,
in the Court of Common Pleas of Fayette County,
Civil Division, at No(s): 982 of 2014 GD

BEFORE:  BOWES, OLSON, and STABILE, JJ.

MEMORANDUM BY OLSON, J.:                    **FILED NOVEMBER 17, 2015**

Appellants, D.B. ("Maternal Grandmother"), and D.B. (Step-Grandfather) (collectively, "Appellants" or "Plaintiffs"), the maternal grandmother and step-grandfather of two minor children, L.C. (born in July of 2006), and J.B. (born in November of 2009) (the "Children"), appeal from the order dated March 9, 2015, and entered on March 11, 2015, awarding J.W. ("Mother") legal and primary physical custody of the Children, and granting Mother's petition to relocate the Children from Fayette County, Pennsylvania, to Matthews, North Carolina, where Mother resides with her current husband, I.W. ("Stepfather"), with specific restrictions relative to her relocation.[1]  The order further dismissed Maternal Step-Grandfather as a

---

[1] Matthews, North Carolina, is approximately fifteen minutes away from Charlotte, North Carolina.  N.T., 11/10/14, at 8, 13.

party to the action, and awarded Maternal Grandmother partial physical custody of the Children. The trial court found that Plaintiffs did not stand *in loco parentis* to the Children, and that Maternal Grandmother had standing to seek only partial custody and/or visitation. After careful consideration, we affirm.

In its Opinion entered on March 11, 2015, the trial court set forth the factual background and procedural history of this appeal, which we incorporate herein and adopt as this Court's own. **See** Trial Court Opinion, 3/11/15, at 1-7.[2] We set forth only the factual background and procedural history necessary to an understanding of the issues raised in this appeal.

> 1. Defendant [Mother] is the biological mother of the minor children, [L.C.], born July [   ], 2006, who is eight years of age, and [J.B.], born November [   ], 2009, who is [five] 5 years of age.
>
> 2. Plaintiff [D.B.] is the maternal grandmother of the minor children; and [D.B.] is the maternal step-grandfather of the minor children. [Because the Plaintiffs share the same initials, we shall refer to them individually by their familial relationships with the Children.]
>
> 3. The parties stipulated that grandmother [D.B.] has standing under 23 Pa.C.S.A. § 5325.
>
> 4. The biological father of [L.C.] is [T.C.], and he has not asserted any right to custody in the course of this trial, [sic] and he currently has no contact with [L.C.], [sic] and he hasn't seen [L.C.] since June 2014.

---

[2] We note that T.C. (biological father of L.C.) was initially named in the case as a party, but the court commented that it should change the caption to reflect that T.C. was no longer a party in the trial court. **See** N.T., 1/28/15, at 4.

5. The biological father of [J.B.] is unknown; however, [J.B.] has viewed [M.B.] as a father figure, and she refers to [M.B.] as her dad. [J.B.] presently sees [M.B.] when [M.B.] takes [J.B.] to church on weekends.

6. Mother was in a relationship with [M.B.], and she testified that she lived with [M.B.] when [J.B.] was born, [sic] and she lived with him in Normalville for a year during 2011-2012, and from 2012 to January 2014 in Mill Run.

7. Mother married [T.C.] in June 2005, and she lived with him from 2005 to 2006, and from 2007-2008, [sic] and they were divorced in 2009 or 2010.

8. Mother first met her current husband [I.W., Stepfather,] 10 years ago when she worked at the Fairfield Inn in New Stanton. The two were out of contact until the end of January 2014, when they began a "phone relationship". [Stepfather] visited Mother in Fayette County in March 2014, and[,] during the same month[,] Mother and the [ ] [C]hildren went to North Carolina to visit [I.W.] for a week.

9. [Mother] married [Stepfather] on April 21, 2014[. In August of 2014, Mother and Stepfather began residing together in Matthews, North Carolina, where they currently live.] This is a first marriage for [Stepfather], who is 33 years old, and a second marriage for Mother, who is 29 years of age.

10. [Mother] decided to relocate to North Carolina in August 2014, before the issue of relocation was heard by [the trial c]ourt, and she agreed that the [C]hildren would remain in Fayette County in the primary custody of her mother and step-father [sic].

11. This [c]ourt finds no reason why [Mother] would not have remained in Fayette County with the [ ] [C]hildren, until such time as the [c]ourt approved or disapproved her relocation. Th[e] [c]ourt [found] that Mother did not promote the [C]hildren's best interest when she relocated to North Carolina without the [C]hildren.

12. [Stepfather] is presently enrolled as a law student at Charlotte School of Law, where he intends to complete his studies for a juris doctor degree in 2016. He took a leave of

absence from law school for one year, due to a seizure disorder resulting from a motor vehicle accident in 2006 [,] in which he sustained a head injury.

13. A transcript was offered to show that [Stepfather] withdrew from classes at Charlotte School of Law for the Fall 2013 semester and the Fall 2014 semester. It is unknown whether this transcript would include classes for which final grades and credits have not been received, such as those classes included in the current semester.

14. Although a class schedule of [I.W.] was presented, this computer-generated class schedule is not sufficient evidence to prove that [Stepfather] is currently actually attending the classes for which he was registered.

15. Mother testified on November 10, 2014 that she was enrolled in Central Piedmont Community College to obtain a degree in accounting; however, when Mother testified in January [of 2015,] she was not enrolled in class[es] due to the pendency of this case.

16. Mother's employment during the past two years included cashier work at Speedy Meedy's, which is a convenience store.

17. In North Carolina, Mother is currently employed as a sales associate for Old Navy, where she is a part-time employee, without predictable work hours, and her hourly rate is $9.00, which is the same rate of pay she received at Speedy Meedy's, where she worked for nearly three years. [Stepfather] has not been employed for several years, and he currently receives disability income in the amount of $677.00 every month.

18. Plaintiff [D.B.] is the mother of Defendant [Mother]; however, [Mother] testified that she has [had] a nonexistent relationship with her mother since May 2014, and [Mother] does not even refer to Plaintiff [D.B.] as "mom", but rather consistently through her testimony, she referred to "D. . .".

19. Prior to March 2014, the parties enjoyed a close family relationship, and the Plaintiffs were significantly involved in the lives of the  [ ] [C]hildren.

20. [L.C.] is a third grade student at Springfield Elementary School in the Connellsville School District.

21. [The C]hildren have a very close relationship with their maternal grandparents, the Plaintiffs, and the Plaintiffs have been a stable, reliable part of the [C]hildren's lives.

22. [L.C.] is upset by the contentious relationship between the parties.

23. [Stepfather] has a history of alcohol abuse, and he was charged with DUI in 2006 and again in 2007. Although he acknowledges himself to be an alcoholic, Mother is in denial of his alcoholism, having testified that she doesn't believe [Stepfather] has a drinking problem. She also said she has no concerns about [Stepfather's alcoholism], because he goes everyday [sic] to Alcoholics Anonymous [AA]; although when he came to Pennsylvania in March 2014, he was not attending meetings or working [with] the AA program.

24. After [Stepfather's] second DUI, he went into an inpatient rehabilitation facility, where he spent 28 days. He relapsed eleven months after he left inpatient treatment the first time, and when he relapsed in March 2008, he returned to the same facility for fourteen days. [Stepfather] admits that he relapsed in July, 2014, and he claims that he hasn't had alcohol since July 2014, [sic] and he remains active in the AA program.

25. This [c]ourt finds, through the credible testimony of Plaintiff [Maternal Step-Grandfather], that [Stepfather] was drinking in March 2014, when he was in Pennsylvania with [Mother] and the [C]hildren.

26. Mother believes the [C]hildren will thrive in North Carolina, although she was not specific; and she believes that "people are brought up better 'down there'", and "people are friendlier there", and "there's not a lot of negativity down there". Although Mother testified that there are many more opportunities for the [C]hildren in North Carolina to go to gymnastics academy, and to swim, she did not offer information to show there are any opportunities in North Carolina which are not available to the [C]hildren here, and she offered only minimal testimony as to how relocation would enhance the quality of life for the [C]hildren, or for herself.

27. When Mother relocated to North Carolina, she was unable to maintain health insurance for the [C]hildren, since they were insured through a Pennsylvania state program.

28. During this current school year, Mother has not had any involvement whatsoever with [L.C.'s] school.

29. During the last school year, when [L.C.] was in second grade, he missed 24 days of school, and Mother testified that she doesn't know why he missed so many days of school, and he shouldn't miss school.

30. Neither Mother nor her current husband has any family in North Carolina. Mother's family is in Fayette County, and [Stepfather's] extended family is in Cumberland, Maryland.

31. Although Mother has lived in nine different residences over the last eight years, she has consistently maintained the address of the Plaintiffs as [L.C.'s] address for all school purposes.

32. The testimony was undisputed that [L.C.] has always been picked up and dropped off from the school bus at the address of [Maternal Grandmother and Step-Grandfather].

33. It is undisputed that [Mother] and [Maternal Grandmother] no longer speak to one another, and neither assumes responsibility for the breakdown of their relationship, [sic] and both insist that it is the other one who won't speak.

34. There is an obvious hostile relationship between the Plaintiffs and [Stepfather], and[,] during an incident in August 2014, when the parties were exchanging custody of the [ ] [C]hildren, [Stepfather] was cited with summary trespass and disorderly conduct.

35. Prior to her relocation to North Carolina, Mother informed the Plaintiffs and Children and Youth Services that she was going to go to "sign over" the "kids" to the Plaintiffs. Mother informed [Maternal Step-Grandfather] that she wants [sic] to move to North Carolina, and the [C]hildren will continue to live with the Plaintiffs.

36. The distance between Mother's residence in North Carolina and the residence of the Plaintiffs is seven to seven and [one-half] hours.

37. Plaintiffs have been married for 15 years, and they have resided in their current residence for 16 years. Plaintiff [Maternal Grandmother] is a self-employed hairdresser, and Plaintiff [Maternal Step-Grandfather] has been employed by West Penn Power for 26 years.

38. Although [Mother] moved to many locations over the past several years, this [c]ourt finds that she routinely returned to the home of the Plaintiffs, [sic] with the [ ] [C]hildren; and she continued to receive mail at the Plaintiff's home, [sic] and she always used the Plaintiff's address for all school-related purposes, as if [L.C.] lived with the Plaintiffs.

39. This [c]ourt finds that [Mother] and the [ ] [C]hildren regarded the Plaintiffs' home somewhat as a "second home", and the [C]hildren each have a room and their own wardrobe at the Plaintiffs' home. The [C]hildren stayed overnight in the Plaintiff's home, regardless of whether Mother was working.

40. The [C]hildren are accustomed to seeing the Plaintiffs on a daily basis.

41. Despite their frequent visits and overnight stays at the home of the Plaintiffs, the children have not resided with the Plaintiffs for a period of twelve consecutive months.

42. In March 2014, when [Stepfather] came to Pennsylvania and began to see [Mother], the relationship with the Plaintiffs drastically deteriorated, and [Mother] refused to permit the Plaintiffs to have any periods of custody with the [C]hildren.

43. Plaintiff [Maternal Grandmother] has recently addressed the [C]hildren's medical needs. Specifically, [J.B.] received three immunizations after Mother relocated to North Carolina, and [L.C.] was treated at the dentist for a few cavities.

44. The Plaintiffs express valid reasons for their opposition to the relocation of the [C]hildren. Specifically, Plaintiffs fear that the [C]hildren will not be properly taken care of, they will not have any family and friends known to them in North Carolina, they will

be taken away from the close family they have in Fayette County, and [sic] [Mother] has always relied on family to help with the [C]hildren, and she won't have such extended family in North Carolina. In addition, Plaintiff [Maternal Grandmother] is concerned that [Mother] will not take the [C]hildren to the doctor when they are sick with a sore throat, sore ears, [sic] fever, and if they are vomiting. She also noted that [Mother] "jumps around a lot", and the [C]hildren would be losing the stability of the Plaintiffs' significant involvement in their life. Plaintiff [Maternal Step-Grandfather] is concerned that a relocation would promote instability. His concern extends to the instability caused by [Stepfather's] alcoholism, [sic] the fact that Mother gets settled somewhere with the [C]hildren and then "uproots" them, and he believes the [C]hildren are far more stable in the Plaintiffs' home.

45. Although Plaintiff [Maternal Grandmother] testified that she believes it is "important for [Mother] to know everything about her children", after [Mother] relocated to North Carolina, [Maternal Grandmother] has failed to make any attempts whatsoever to provide information to Mother about the [C]hildren.

46. Mother refused to permit the Plaintiffs to have any contact with the [ ] [C]hildren for two months, from April to June in 2014.

47. Plaintiff [Maternal Step-Grandfather] serves as a liaison between Mother and Maternal Grandmother, and he has been the facilitator of custody exchanges since June 2014.

Trial Court Opinion, 3/11/15, at 1-7.

On May 19, 2014, Maternal Grandmother and Maternal Step-Grandfather filed a complaint for custody, seeking primary physical custody of the Children, and alleging that they had stood *in loco parentis* to the Children for extended periods of time and that they had standing pursuant to section 5324 of the Child Custody Act, 23 Pa.C.S.A. § 5324. Appellants also

- 8 -

alleged that they had standing pursuant to section 5325 of the Child Custody Act. On June 24, 2015, Mother filed an answer to the complaint.

On June 27, 2014, the trial court entered a temporary consent order upon the agreement of the parties. The order provided that the parties stipulated that Maternal Grandmother had standing pursuant to section 5325. The order further stated that the issue of the standing of Maternal Grandmother under section 5324, and the standing of Maternal Step-Grandfather under sections 5324 and 5325, was deferred. Finally, the order provided that Mother had legal custody of the Children pending further order of court.

On September 17, 2014, Mother filed a notice of proposed relocation with the Children to Matthews, North Carolina. On September 25, 2014, Appellants filed a counter-affidavit regarding relocation.

The trial court held hearings on the custody complaint on November 10, 2014, January 28, 2015, and January 29, 2015. At the hearing on November 10, 2015, Mother testified on her own behalf. At the hearing on January 28, 2015, Mother testified on re-direct examination and re-cross examination. Stepfather also testified on behalf of Mother, and Maternal Grandmother testified on her own behalf. At the hearing on January 29, 2015, Maternal Grandmother and Maternal Step-Grandfather testified on their own behalf. Maternal Grandmother and Maternal Step-Grandfather also presented a number of other witnesses on their behalf.

On January 30, 2015, the trial court entered an order directing that, until a final custody order would be entered, Appellants would continue to have the authority to make any and all necessary medical and/or educational decisions while the Children are in their physical custody. The order further provided that, as long as Mother continued to reside in North Carolina, the Children would remain in the physical custody of the Appellants, and Mother would have the right to exercise partial physical custody one weekend each month in Fayette County. The order also made a provision in the event that Mother would relocate or temporarily stay in Fayette County prior to the entry of a final custody order.

On February 3, 2015, Appellants filed a petition for special relief seeking to reopen the record to admit exhibits relating to the actual status of the enrollment of Stepfather in law school in North Carolina, and his law school grade record transcript. On February 9, 2015, the trial court entered an order re-opening the record of the custody trial for the limited purpose of admitting Plaintiff's Exhibit F, and Defendant's Exhibit 3, relating to Stepfather's law school enrollment and grade record transcript.

On March 11, 2015, the trial court entered the order that awarded Mother legal and primary physical custody of the Children, and granted Mother's petition to relocate the Children to North Carolina, with specific restrictions relative to her relocation. The order further removed Maternal Step-Grandfather as a party to the action, and awarded Maternal

Grandmother partial physical custody of the Children. The trial court found that Plaintiffs did not stand *in loco parentis* to the Children, and that Maternal Grandmother had standing to seek only partial custody and/or visitation. On April 7, 2015, Appellants timely filed their notice of appeal from the March 11, 2015 order, along with a concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

On appeal, Appellants raise the following issues:

1. Whether the Trial Court erred and/or abused its discretion in finding that Maternal Grandmother and Maternal Step-Grandfather, lacked standing to file for physical and legal custody under 23 Pa.C.S.A. § 5324?

   a. Whether the Trial Court erred/abused its discretion in finding that the Maternal Grandmother and Maternal Step-Grandfather lacked '*in loco parentis*' standing of the minor children, when they had solely acted as the primary caregivers for the children since August 22, 2014?

   b. Whether the Trial Court erred and/or abused its discretion in looking at the date of filing the custody action, as opposed to the date of the hearings on the action, for purposes of determining the standing of the Maternal Grandmother and Maternal Step-Grandfather?

   c. Whether the Trial Court erred and/or abused its discretion in failing to find that the Maternal Grandmother and Maternal Step-Grandfather had standing under 23 Pa.C.S.A. § 5324(3)?

2. Whether the Trial Court erred and/or abused its discretion in dismissing the Maternal Step-Grandfather from the custody action for lack of standing, when he has played a significant role in the raising of these children, [sic] since birth and has been *in loco parentis* since before Mother filed her Petition for Relocation?

- 11 -

3. Whether the Trial Court erred and/or abused its discretion in granting Mother's Petition for Relocation and award of primary custody to Mother where:

a. the testimony supports a finding that Mother lacked any involvement in the children's lives after she relocated and failed to attend to the children's medical needs?

b. Mother has historically failed to provide a stable home and environment for the minor children?

c. the testimony allowed that there is no extended family available for the children if the relocation were granted?

d. the testimony demonstrated Mother's lack of concern for the emotional well-being of the minor children, by relocating prior to obtaining Court permission, and failing to maintain any sort of regular contact with the children after she relocated?

e. the testimony demonstrated that Mother has neglected the educational and medical needs of the minor children?

f. the testimony demonstrated a concern for Mother's ability to make appropriate child care arrangements for the children?

g. the testimony demonstrated a history of alcohol abuse by the [m]other's husband, who will be residing in the home with the minor children?

h. the testimony failed to demonstrate evidence that it will enhance the quality of life of the [m]other or minor children?

i. the testimony failed to demonstrate sufficient reason or motivation for the relocation?

4. Whether the Trial Court erred and/or abused its discretion in finding that the [r]elocation of the children would be in the minor children's best interest, considering all of the relevant factors?

Appellant's Brief, at 4-6.[3]

In their brief on appeal, Appellants state that, while they have raised a number of issues on appeal, their primary issue on appeal is whether the trial court erred as a matter of law and/or abused its discretion when it found that they lacked standing under section 5324 of the Child Custody Act. Appellants assert that they had acted as the sole care providers for the Children since August 22, 2014, by the consent of the parents of the Children. Further, Appellants allege that Mother left the Children without proper care and supervision, requiring Appellants to adopt the role of parent for the Children. Appellants also contend that the trial court erred as a matter of law and/or abused its discretion in dismissing Maternal Step-Grandfather from the action for lack of standing. Appellants assert that Maternal Step-Grandfather clearly acted in a parental role for the Children for an extended period of time. Appellants further claim that Maternal Step-Grandfather undisputedly had acted as a parent to the Children after August 22, 2014, when Mother relocated to North Carolina without the Children. Appellants request this Court to enter an order finding that they had standing under section 5324, and to remand the matter to the trial court, reinstating Maternal Step-Grandfather as a party.

---

[3] We observe that Appellants stated their issues somewhat differently in their Concise Statement of Errors Complained of on Appeal. We, nevertheless, find the issues preserved for our review.

Further, Appellants assert that the trial court erred as a matter of law and/or abused its discretion in granting Mother's petition for relocation. They claim that the award of primary physical custody to Mother is not in the best interest of the Children, and that the numerous relocation considerations indicate that relocation is not in the Children's best interest. The Appellants, therefore, request this Court to reverse the grant of Mother's petition for relocation.

A trial court's determination regarding standing will not be disturbed absent an abuse of discretion. **Butler v. Illes**, 747 A.2d 943, 944 (Pa. Super. 2000).

In custody cases, our standard of review is as follows:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

**C.R.F. v. S.E.F.**, 45 A.3d 441, 443 (Pa. Super. 2012) (citation omitted).

This Court has stated: "[a]n abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either

- 14 -

manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused." ***Bulgarelli v. Bulgarelli***, 934 A.2d 107, 111 (Pa. Super. 2007) (quotation omitted).

Section 5324 of the Child Custody Act provides as follows:

**§ 5324.  Standing for any form of physical custody or legal custody**

The following individuals may file an action under this chapter for any form of physical custody or legal custody:

(1) A parent of the child.

(2) A person who stands *in loco parentis* to the child.

(3) A grandparent of the child who is not *in loco parentis* to the child:

(i) whose relationship with the child began either with the consent of a parent of the child or under a court order;

(ii) who assumes or is willing to assume responsibility for the child; and

(iii) when one of the following conditions is met:

(A) the child has been determined to be a dependent child under 42 Pa.C.S. Ch. 63 (relating to juvenile matters);

(B) the child is substantially at risk due to parental abuse, neglect, drug or alcohol abuse or incapacity; or

(C) the child has, for a period of at least 12 consecutive months, resided with the grandparent, excluding brief temporary absences of the child from the home, and is removed from the home by the parents, in which case the action must be filed within six

months after the removal of the child from the home.

42 Pa.C.S.A. § 5324.

Section 5325 of the Child Custody Act provides as follows:

**§ 5325. Standing for partial physical custody and supervised physical custody**

In addition to situations set forth in section 5324 (relating to standing in any form of physical custody or legal custody), grandparents and great-grandparents may file an action under this chapter for partial physical custody or supervised physical custody in the following situations:

(1) where the parent of the child is deceased, a parent or grandparent of the deceased parent may file an action under this section;

(2) where the parents of the child have been separated for a period of at least six months or have commenced and continued a proceeding to dissolve their marriage; or

(3) when the child has, for a period of at least 12 consecutive months, resided with the grandparent or great-grandparent, excluding brief temporary absences of the child from the home, and is removed from the home by the parents, an action must be filed within six months after the removal of the child from the home.

42 Pa.C.S.A. § 5325.

Pursuant to section 5324 of the Act, "A person who stands *in loco parentis* to the child" may file an action for any form of physical or legal custody. In **Peters v. Costello**, 891 A.2d 705 (Pa. 2005), our Supreme Court outlined the relevant principles as follows:

The term *in loco parentis* literally means "in the place of a parent." *Black's Law Dictionary* (7th Ed. 1991), 791.

> The phrase "*in loco parentis*" refers to a person who puts oneself [sic] in the situation of a lawful parent by assuming the obligations incident to the parental relationship without going through the formality of a legal adoption. The status of *in loco parentis* embodies two ideas; first, the assumption of a parental status, and, second, the discharge of parental duties. . . . The rights and liabilities arising out of an *in loco parentis* relationship are, as the words imply, exactly the same as between parent and child.

**Peters**, 891 A.2d at 710 (citation and footnote omitted).

This Court has stated that a third party cannot place himself or herself *in loco parentis* status in defiance of the parents' wishes, and the parent/child relationship. **Gradwell v. Strausser**, 610 A.2d 999, 1003 (Pa. Super. 1992).[4] **See E.W. v. T.S.**, 916 A.2d 1197, 1205 (Pa. Super. 2007) (stating, "the law provides that *in loco parentis* status cannot be achieved without the consent and knowledge of, and in disregard of the wishes of a parent"). The frequency of a caretaker's services does not confer *in loco parentis* status. **Argenio v. Fenton**, 703 A.2d 1042, 1044 (Pa. Super. 1997) (holding that grandmother's serving as child's frequent caretaker was insufficient to confer on grandmother standing to file custody dispute against child's birth father).

In its Opinion and Order, the trial court provided the following analysis:

> After reviewing the facts of this case and the applicable case law, this [c]ourt cannot confer standing upon the Plaintiffs

---

[4] Persons other than parents are "third parties" for purposes of custody disputes. **See Gradwell**, 610 A.2d at 1001.

pursuant to § 5324(2) through "in loco parentis" status. Our Supreme Court explained in loco parentis status in **T.B. v. L.R.M.**, 786 A.2d 913 (Pa. 2001), and the Superior Court refused to recognize *in loco parentis* status in **D.G. v. D.B.**, 91 A.3d 706 (Pa. Super.2014). In **D.G.**, maternal grandmother sought primary [physical] custody and argued that she stood in loco parentis to her grandchild. Despite [the fact] that the child resided for periods of time with grandmother, and she took the child to medical appointments, cooked for the child, financially supported the child, did laundry for the child, and cared for the child, she was not in loco parentis. The [c]ourt reasoned that the grandmother's efforts were more consistent with grandmother assisting the mother and the child, but grandmother did not show an intent to assume all of the rights and responsibilities of parenthood.

Similar to the grandmother in **D.G.**, the Plaintiffs in the instant case have played a significant role in the lives of the [ ] [C]hildren. Plaintiffs have certainly provided financially for the [C]hildren, and they have opened their home to the [C]hildren, with each child having his/her own room, clothes, and toys at the Plaintiff's home. Even though there were periods of co-residency between the Plaintiffs, the [C]hildren, and [Mother], these periods of co-residency are consistent with the Plaintiffs providing assistance to Mother during times when Mother was in-between relationships, or for other reasons moved in and out with Plaintiffs. Despite [the fact] that [L.C.,] and[,] at times[,] [J.B.,] spent two to four nights each week with the Plaintiffs, this [c]ourt cannot find that the [ ] [C]hildren were living with the Plaintiffs. [L.C.] himself stated that he "lived" with "mom and [Stepfather]", and he "stayed" at "grandma's". The assistance and involvement of the Plaintiffs have been substantial and commendable, but this [c]ourt does not find that the Plaintiffs' involvement with the [C]hildren over the years is consistent with an intent to assume all rights and responsibilities of parenthood, but[,] rather[,] their role has been one of loving grandparents who have made themselves consistently available to assist with their grandchildren. For these reasons, this [c]ourt finds that the Plaintiffs did not have in loco parentis status to the [ ] [C]hildren at the time this action was filed.

Trial Court Opinion, 3/11/15, at 8-10.

In their brief on appeal, Appellants cite **T.B. v. L.R.M.**, 786 A.2d 913 (Pa. 2001), for the proposition that the phrase *in loco parentis* refers to a person who puts oneself in the situation of a lawful parent by assuming the obligations incident to the parental relationship without going through the formality of a legal adoption. Appellants' Brief at 15. Appellants argue that, from at least the time that Mother relocated to North Carolina in August of 2014, through the dates of the custody relocation trial on November 10, 2014, January 28, 2014, and January 29, 2014, they acted as the lawful parents of the Children. **Id.** Appellants assert that the evidence showed that Mother failed to be involved with the Children's education, medical concerns, and physical well-being during this time, and left the parenting duties exclusively to Appellants. Appellants also assert that Mother visited the Children only twice during the time after Mother's relocation to North Carolina. The first visit was at the custody trial and the second during the Christmas holiday. Appellants contend that the trial court failed to consider that they were acting *in loco parentis* at the time that was relevant to the petition for relocation, and instead found that they lacked standing based on their status at the time that the Appellants filed the custody action. **Id.** at 15-16.

Additionally, Appellants cite **D.G. v. D.B.**, 91 A.3d 706 (Pa. Super. 2014). In **D.G.**, the child's maternal grandmother and step-grandfather filed a custody action in 2009, seeking partial physical custody of the child. The

parties entered into an agreement in January of 2010. In 2013, the grandmother and step-grandfather filed a modification petition, seeking primary physical custody and joint legal custody of the child based on the allegations that the mother was neglecting the child. At the time that the matter came before the trial court in 2013, the child had not lived with the grandmother for four years. The trial court found that the grandmother had *in loco parentis* standing, and awarded her primary physical custody of child. On appeal by the mother, this Court vacated the trial court's order and remanded the matter, finding that the grandmother's actions were more consistent with assisting the mother and the child in a time of need than with serving as the child's parent. **D.G.**, 91 A.3d at 711.

Here, Appellants assert that, in **D.G.**, this Court held that the maternal grandmother's *in loco parentis* standing was properly examined with regard to the custody trial in 2013, and not at the time when the custody action was initially commenced on 2009. Appellants allege that, as in **D.G.**, this Court should examine their *in loco parentis* standing at the time that Mother filed the custody relocation petition in August of 2014 and the court held the relocation hearings in 2014 and 2015, and not at the time that they filed the initial custody action in May of 2014. **See** Appellants' Brief at 16.

In its Statement in Lieu of Opinion, the trial court provided the following explanation for rejecting the argument of Maternal Grandmother and Maternal Step-Grandfather that they had *in loco parentis* standing

because they had solely acted as the primary caregivers for the Children since August 22, 2014.

The Superior Court has explained that "The rights and liabilities arising out of an *in loco parentis* relationship are, as the words imply, exactly the same as between parent and child." **Morgan v. Weiser**, 923 A.2d 1183, 1187 (Pa. Super. 2007). "The third party in this type of relationship, however, cannot place himself *in loco parentis* in defiance of the parents' wishes and the parent/child relationship." **Id.**

The Complaint for Custody in this matter was filed by the [P]laintiffs on May 19, 2014, and when [Mother] filed her Answer on June 24, 2014, she denied that the [P]laintiffs have stood *in loco parentis* to the [ ] [C]hildren. In fact, when the parties attended a custody conference and entered into a Temporary Custody Consent Order dated June 27, 2014, the following provisions were included:

"That the issue as to the standing of the Plaintiff Maternal Grandmother, [D.B.], under Section 5324 and the standing of the Plaintiff Maternal Step-Grandfather, [D.B.], under Section 5324, [sic] 5325, are deferred; and that it is stipulated that the Maternal Grandmother, [D.B.,] has standing under Section 5325."

"The Mother and the Grandparents have entered into this temporary arrangement in order to stabilize custody and to afford the parties an opportunity to attempt an amicable long-term resolution. This temporary arrangement shall not create a *status quo*. Neither party waives a claim to primary custody or to equally (shared) custody.

"It is understood that Mother is married to a law student who resides in North Carolina, and in the event that the Mother decides to relocate as a consequence of her husband's studies or eventual employment, she must first give advance notice to all other parties and must work out a mutual substitute physical custody arrangement with the Maternal Grandparents. The Defendant, [T.C.], does not at this time waive the relocation procedures provided by law."

- 21 -

After the parties' custody conference, [Mother] did give proper notice of relocation, and [P]laintiffs objected to said relocation. [Mother] testified that she believed that[,] if she moved to Matthews and removed the [ ] [C]hildren from Pennsylvania, then she would be in contempt of [c]ourt. Therefore, according to her testimony, [Mother] moved to North Carolina in order to establish her residency there, and she waited for a court proceeding before taking the [ ] [C]hildren. (See Custody Trial Proceedings, Volume 1 of 3, page 77). Accordingly, when [Mother] left the [ ] [C]hildren in Pennsylvania in the care of the Plaintiffs, believing that it [would be] in contravention of a [c]ourt order [if she were] to remove the [C]hildren, this [c]ourt cannot find that she acquiesced with the idea that her mother and stepfather would become *in loco parentis*. [Mother] had clearly objected to the standing of the Plaintiffs when this action was first initiated, and both parties[,] by their Consent Order of June 27, 2014, acknowledged that their temporary arrangement would not create a *status quo*. This [c]ourt believes that to allow [P]laintiffs to benefit from the custody arrangement that was temporarily in place pending a determination by this [c]ourt after a custody trial would be unjustifiable.

*See* Trial Court Opinion, 5/29/15, at 2-4.

We find no error of law or abuse of discretion on the part of the trial court in concluding that Appellants lacked *in loco parentis* standing to pursue primary physical custody in this matter.[5] *Butler*, 747 A.2d at 944.

Next, Appellants contend that, if this Court concludes that they lack *in loco parentis* standing, they have standing under section 5324(3) to assert a

_____

[5] Appellants urge that the order entered in October of 2014 in the Fayette County dependency court, granting them temporary legal and physical custody of the Children, is evidence of their *in loco parentis* status with regard to the Children. *See* Appellants' Brief at 17-18. For the reasons expressed by the trial court, any order relating to their custody of the Children while Mother was in North Carolina pending the litigation in this custody matter is not controlling of their *in loco parentis* status.

claim for legal and physical custody. *See* Appellants' Brief at 18. Appellants claim that they are the Children's grandparents, that their relationship with the Children began with the consent of Mother, and that they are willing to continue to assume responsibility for the Children. *Id.* With regard to section 5324(3)(iii), Appellants contend that the Children are at substantial risk due to alcohol abuse by Stepfather and parental neglect by Mother regarding her failure to obtain health insurance coverage for them, which they assert was part of a dependency action filed by Fayette County Children and Youth Services ("CYS"). *Id.* Appellants allege that CYS withdrew the dependency with the understanding that Appellants were awarded temporary legal custody of the Children so that they could obtain health insurance for them. *Id.* at 18-19. Moreover, with regard to section 5324(3)(iii)(C), Appellants allege that the evidence established that they provided a home for the Children for at least twelve months preceding the filing of the custody action. Appellants assert that they have provided the primary home for the Children for years, and that Appellants' address was the permanent address for L.C.'s school enrollment and medical purposes.

The trial court rejected Appellants' argument, stating as follows:

> The final statutory basis for standing, which can apply only to a "grandparent", is § 5324. This [c]ourt finds that [Maternal Grandmother] does not meet the necessary elements for this [c]ourt to confer standing under subparagraphs [sic] iii(A), iii(B), or iii(C). The children at issue in this case clearly have not been adjudicated dependent, and the testimony did not reveal that the [C]hildren are substantially at risk due to parental abuse, neglect, drug or alcohol abuse, or incapacity.

- 23 -

> Although this [c]ourt finds the Plaintiffs' concern over [Stepfather's] alcoholism and recent relapse to be well-justified, the statute addresses risk due to the ***parent's*** alcohol abuse. Additionally, although it was well[-]established that the [C]hildren, along with their [m]other, moved in and out of the Plaintiffs' home over the past several years, the [C]hildren spent many overnights with the Plaintiffs, and the Plaintiffs' address was used for all school-related paperwork for [L.C.], it was not proven that the [C]hildren resided with the Plaintiffs for a period of at least twelve consecutive months.

Trial Court Opinion, 3/11/15, at 10 (emphasis added).

We find no error of law or abuse of discretion on the part of the trial court in concluding that Appellants lacked standing to pursue primary physical custody in this matter.

Next, we address Appellants' argument that the trial court erroneously dismissed Maternal Step-Grandfather as a party in this action, finding that he lacked standing required as a grandparent to be included in such a proceeding. Appellant's Brief, at 20. Relying on ***K.B., II v. C.B.F.***, 833 A.2d 767 (Pa. Super. 2003), Appellants contend that Maternal Step-Grandfather has *in loco parentis* standing and standing under section 5324 as a grandparent, despite his lack of a biological relationship. Appellants request this Court to vacate the portion of the trial court order that dismissed Maternal Step-Grandfather as a party in this action, and grant him *in loco parentis* status to assert his claim for custody of the Children. Appellants' Brief at 20.

The trial court addressed Appellants' argument as follows:

The first issue this [c]ourt must address is whether the Plaintiffs have standing to bring an action for custody and/or partial custody. Since the parties stipulated that maternal grandmother, Plaintiff [D.B], has standing under 23 Pa.C.S.A. § 5325, we will first consider whether this statutory section also confers standing on Plaintiff [D.B.].

The statutory language of 23 Pa.C.S.A. § 5325 includes the situations under which "grandparents and great-grandparents" may file an action for partial physical custody or supervised physical custody.

In **Hill v. Divecchio**, 625 A.2d 642, 648 (Pa. Super. 1993), an action for custody was brought by the maternal grandmother and maternal step-grandfather, and the Superior Court denied that step-grandfather had standing. Th[is] Court held that the unambiguous words of the statute which state "upon application of the parent or grandparent of a party" preclude the mother's step-father, the child's step-grandfather, from asserting a cause of action for visitation and/or partial custody in conjunction with the child's natural grandmother. Therefore, in the instant case, we cannot confer standing upon the step-grandfather under § 5325.

* * *

Based on the [c]ourt's analysis of standing, this [c]ourt concludes that [Maternal Grandmother] has standing to seek partial custody, under section 5325(2). [Maternal Step-Grandfather] has been abundantly loving and supportive to his step-grandchildren, and he has been a great source of stability for the [C]hildren. However, this [c]ourt is constrained by the clear language of the statutes[,] as well as case law[,] and must find that [Maternal Step-Grandfather] lacks standing and shall be dismissed as a party to this lawsuit.

Trial Court Opinion, 3/11/15, at 10.[6]

---

[6] We note that, on August 10, 2015, Appellants filed with this Court a Supplemental Reproduced Record. We may not consider this document, however, as it was not made a part of the certified record on appeal. **Commonwealth v. Preston**, 904 A.2d 1, 6-7 (Pa. Super. 2006) (*en banc*).

We find no error of law or abuse of discretion on the part of the trial court in concluding that Appellant Maternal Step-Grandfather lacked standing to pursue partial physical custody in this matter. *Butler*, 747 A.2d at 944.

We find that there was competent evidence in the record to support the trial court's credibility and weight determinations. Thus, we will not disturb them. *C.R.F.*, at 443. Accordingly, we find that the trial court did not abuse its discretion in denying Maternal Grandmother and Maternal Step-Grandfather third-party standing, and dismissing Maternal Step-Grandfather as a party in this action. *See Butler*; *Gradwell*; and *Argenio*, *supra*.[7]

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/17/2015

---

[7] Based on this conclusion, we need not address Appellant's issues regarding the propriety of the trial court's grant of Mother's petition to relocate to North Carolina with the Children.